# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN COLBY, et al., | Case No. 1:25-cv-00387-JLT-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING MOTION FOR TRANSFER OF VENUE |
| v. | |
| VISIONWORKS OF AMERICA, INC., | (ECF No. 8) |
| Defendant. | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Currently before the Court is Defendant VisionWorks of America, Inc.'s ("Defendant" or "VisionWorks") motion for a change of venue, filed June 30, 2025. (ECF No. 8.) The Court heard oral argument on September 10, 2025. Sonjay Singh, Esq., appeared on behalf of Plaintiffs. Lori Chang, Esq., and David Marenberg, Esq., appeared on behalf of Defendant. Having considered the filings, the parties' arguments at the hearing, and the Court's file, the Court will recommend granting Defendant's motion to change venue, pursuant to 28 U.S.C. § 1404(a).

**I.**

**BACKGROUND**

This case is an online, data privacy class action concerning the transmission of personally identifiable information to unauthorized third parties. (ECF No. 1, ¶ 3.) Defendant VisionWorks is a Texas corporation, with its principal place of business in San Antonio, where it offers

1  optometry and retail services nationwide. (Id. at ¶¶ 10, 40.) Plaintiffs reside in California, Illinois, Maryland, and New York. (Id. at ¶¶ 16, 22, 28, 34.) Plaintiffs allege that while using Defendant's scheduling website, VisionWorks collected and transmitted personally identifiable, sensitive health information to unauthorized third parties, such as Alphabet, Inc. (Google), through online tracking tools, in violation of the Health Insurance Portability and Accountability Act ("HIPPA"). (Id. at ¶¶ 3, 12-13.)

On April 3, 2025, Plaintiffs filed a putative class action against VisionWorks, alleging the following claims: 1) Invasion of Privacy – Intrusion Upon Seclusion; 2) Breach of Confidence; 3) Breach of Fiduciary Duty; 4) Negligence; 5) Breach of Implied Contract; 6) Unjust Enrichment; 7) violations of Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), *et seq.*; 8) violations of California Invasions of Privacy Act, Cal. Pen. Code § 360, *et seq.*; 9) violations of California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, *et seq.*; 10) violations of Maryland Wiretapping and Electronic Surveillance Act, Md. Code Ann., Cts. & Jud. Proc. § 10-401, *et seq.*; and 11) violations of New York Gen. Bus. L. § 349. (ECF No. 1, ¶ 15.) Plaintiffs seek to certify the nationwide class and California, Illinois, New York, and Maryland subclasses. (Id. at p. 56.) On behalf of themselves and other class members, Plaintiffs pray for equitable and injunctive relief that would enjoin Defendant from misusing and/or disclosing their sensitive health information, as well as damages available at equity or law, prejudgment interest, attorneys' fees, and costs for claims. (Id.)

On June 6, 2025, Defendant VisionWorks filed the instant motion to transfer venue pursuant to the first-to-file rule and 28 U.S.C. § 1404(a). (ECF No. 8.) The motion was referred to the undersigned by the assigned District Judge. (ECF No. 17.) On July 21, 2025, Plaintiffs opposed, arguing that transferring the case would be inequitable under the first-to-file rule and that Defendant failed to show that the factors under 28 U.S.C. § 1404(a) weigh in its favor. (ECF No. 10, pp. 4, 10-11.) On August 4, 2025, Defendant filed its reply. (ECF No. 15.) A hearing was held on September 10, 2025, and the matter was taken under submission. (ECF No. 19.) The Court now issues its finding and recommendations.

/ / /

# II.

# RELATED CASE

On February 23, 2024, a putative class action was filed in the Western District of Texas against VisionWorks concerning the alleged unauthorized disclosure of individuals' protected health information to third parties. Sharma v. VisionWorks of America, Inc., No. 5:24-cv-00206-FB-ESC, Complaint, ECF No. 1 (W.D. Tex. Feb. 23. 2024).[1]  The complaint alleges that VisionWorks implemented and utilized various tracking technologies on its website that collected and transmitted users' protected health information to Meta (Facebook) without their consent. (Id. at ¶¶ 3, 5, 7, 15.)  The plaintiffs in the Sharma case reside in North Carolina, Pennsylvania, Kentucky, and Georgia. (Id. at ¶¶ 24-27.)  Notably, one of the named plaintiffs is also a plaintiff in the present case, and VisionWorks is the sole defendant in both actions. (ECF No. 8, p. 1.)

On May 29, 2024, VisionWorks filed a motion to compel mediation and a separate motion to dismiss. Sharma, 5:24-cv-00206-FB-ESC, ECF No. 14.  Following a hearing on the motions, VisionWorks filed a joint motion for continuance for sixty days as the parties agreed to participate in mediation in September of 2024.  ECF No. 28.  The court granted the parties' motion to continue the hearing on the motions and ordered that the parties advise the court within 10 days of the mediation.  ECF No. 29.  In November 2024, the parties renewed their agreement to participate in mediation and moved for a continuance of eighty days.  ECF No. 30.  The court granted the second continuance, stayed the case pending mediation in January 2025, and reminded the parties to advise the court on the outcome within ten days of the mediation.  ECF No. 31.  On February 12, 2025, the court administratively closed the case in light of the parties' failure to file the advisory stating, "[t]o date, the parties have not filed the ordered advisory regarding the mediation. Due to the extraordinary delay in this case . . . the [c]ourt has determined the best course is to administratively close this case and to dismiss all pending motions without prejudice

---

[1] Under the Federal Rules of Evidence, a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice may be taken "of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Thus, the Court takes notice of the docket in the Sharma action.

to refiling updated versions of the motions or another responsive pleading if the case is ultimately reopened." ECF No. 33.

### III.

### LEGAL STANDARDS

#### A. Motion to Transfer Under First-to-File Rule

The first-to-file rule is "a judicially created doctrine of federal comity, which applies when two cases involving substantially similar issues and parties have been filed in different districts." In re Bozic, 888 F.3d 1048, 1051 (9th Cir. 2018) (citations omitted). Under this rule, "the second district court has the discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." Id. at 1051-52 (quoting Cedars–Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997)).

In determining whether the rule applies, courts consider three factors: "chronology of the lawsuits, similarity of the parties, and similarity of the issues." Kron Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc., 787 F.3d 1237, 1240 (9th Cir. 2015). The first-to-file rule "is not rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." Pacesetter Sys. Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982). Courts may, "in the exercise of their discretion, dispense with the first-filed principle for reasons of equity." Alltrade, Inc. v. Uniweld Prods., 946 F.2d 622, 628 (9th Cir. 1991).

#### B. Motion to Transfer Pursuant to 28 U.S.C. § 1404

A district court may transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of this section is to "prevent the waste of time, energy and money and . . . protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26-27 (1960)). In considering a transfer pursuant to § 1404(a), the district court undertakes an "individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen, 376 U.S. at 622)).

The party seeking a change of venue has the burden of demonstrating transfer is appropriate. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979). Courts consider several non-exhaustive factors to determine whether the convenience and interest of justice elements are met, such as: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time in each forum." Walters v. Famous Transps., Inc., 488 F. Supp. 3d 930, 936 (N.D. Cal. 2020); see also Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). "Weighing of the factors for and against transfer involves subtle considerations . . . ." Ventress v. Japan Airlines, 486 F.3d 1111, 1118 (9th Cir. 2007). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." Park v. Dole Fresh Vegetables, Inc., 964 F. Supp 2d 1088, 1093 (N.D. Cal. 2013) (citing Stewart, 487 U.S. at 29).

## IV.

## DISCUSSION

### A. Motion to Transfer Pursuant to First-to-File

Defendant argues the Court should transfer the case to the Western District of Texas under the first-to-file rule, asserting that the Sharma complaint was the earlier filed action, that the parties in both cases substantially overlap, and that both complaints allege the use of tracking technologies on the VisionWorks's website. (ECF No. 8, pp. 6-8.) Plaintiffs rebut this argument stating that the first-to-file rule is discretionary and should not be applied here because Sharma has been administratively closed. (ECF No. 10, pp. 4-10.) Plaintiffs further assert that the two cases are factually distinct because they involve different software companies that collect different types of information, the putative class members in the Sharma complaint include individuals not encompassed within the class definition of the present action, and Sharma involves an arbitration clause. (Id. at pp. 6-10.) Defendant replies that while the tracking technologies are different, they still involve VisionWorks's website and involve the same activity—the appointment scheduling tool. (ECF No. 15, p. 2.) Additionally, Defendant argues that Sharma

1 remains pending on the docket and may be reopened at any time; therefore, the contention that
2 the case will sit in purgatory is speculative and is not a valid basis for denying transfer. (Id. at
3 pp. 3-4.) Defendant's arguments are not persuasive.

4       The Court finds the first-to-file rule inapplicable under the circumstances presented.
5 Although Sharma was initiated earlier, it has been administratively closed since February 12,
6 2025. (ECF No. 10, p. 5.) Courts may use their inherent power to manage their docket to
7 administratively close cases, which is "the practical equivalent of a stay." Sarkar v. Garland, 39
8 F.4th 611, 618 (9th Cir. 2022) (quoting Quinn v. CGR, 828 F.2d 1463, 1465 n.2 (10th Cir. 2010)).
9 Administrative closures allow a court to "shelve pending, but dormant, cases" without a final
10 adjudication. Id. (quoting Lehman v. Revolution Portfolio LLC, 166 F.3d 389, 392 (1st Cir.
11 1999)). "In layman's terms, the case is asleep but not dead." Id.

12       The status of Sharma remains unclear. Neither party has provided any meaningful update
13 regarding its current posture or the likelihood of it being reopened in the near future. Accordingly,
14 there is no assurance that transferring this case to the Western District of Texas would result in
15 any progression. Because Sharma is inactive, it does not present the risk of duplicative rulings or
16 inconsistent judgments that the first-to-file rule was designed to prevent.

17       Even assuming that the threshold requirements for the first-to-file rule were met, a court
18 may decline to apply the rule for "reasons of equity." Alltrade, 946 F.2d at 628. As the Ninth
19 Circuit has recognized, circumstances and modern judicial reality permit a court to deviate from
20 the application of the rule from time to time. Church of Scientology of California v. U.S. Dep't
21 of Army, 611 F.2d 738, 750 (9th Cir. 1979). The Court finds that such deviation is warranted
22 here.

23     **B.**    **Motion to Transfer Pursuant to § 1404(a)**

24       Preliminarily, the Court finds that this action could have been brought in the Western
25 District of Texas. Under the Class Action Fairness Act, minimal diversity is satisfied because
26 VisionWorks is a Texas corporation with its principal place of business in San Antonio, Texas,
27 there are more than 100 class members of which many are citizens of a different state than
28 Defendant, and the amount in controversy exceeds the sum of $5,000,000, which satisfies 28

U.S.C. § 1332(d). (ECF No. 1, ¶¶ 40, 41.) Additionally, subject matter jurisdiction has been satisfied because the complaint asserts a claim for a violation of federal law. 28 U.S.C. § 1331. (Id. at ¶ 41.) The Western District of Texas has personal jurisdiction over VisionWorks because its principal place of business is located there. (Id. at ¶ 40.) Venue is proper in the District of Texas because VisionWorks resides there and a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred there. 28 U.S.C. § 1391. Plaintiff does not dispute that this action could have been brought in the Western District of Texas.

The Court therefore turns to whether transfer is warranted for the convenience of the parties and witnesses and in the interest of justice.

### 1. Plaintiffs' Choice of Forum

A plaintiff's choice of forum is ordinarily given significant weight and will not be disturbed unless other factors weigh substantially in favor of transfer. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). However, "in class actions, a plaintiff's choice of forum is often accorded less weight." Hawkins v. Gerber Prods. Co., 924 F. Supp 2d 1208, 1214 (S.D. Cal. 2013) (citing Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987) ("Although great weight is generally accorded plaintiff's choice of forum . . . when an individual . . . represents a class, the named plaintiff's choice is given less weight."). In evaluating the weight to be accorded to the plaintiff's choice of forum in a class action, courts consider the extent of both parties' contacts with the forum, including those contacts relating to the plaintiff's cause of action. See Lou, 834 F.2d at 739. If the operative facts have not occurred within the forum, deference to the plaintiff's choice of forum is diminished. Id.

Defendant argues Plaintiffs' choice of forum is entitled to minimal deference in light of the putative class action. (ECF No. 8, pp. 18-19.) Defendant also contends that deference should be reduced where there is an appearance of forum shopping, which Defendant alleges is present. (Id. at 19.) In support, Defendant notes that the California Plaintiff here regularly litigates outside of this District, one named Plaintiff in this action appears to be a plaintiff in Sharma, and "the only purported connection between this action and the Eastern District of California was created around three days before filing suit." (Id.) In response, Plaintiffs assert that their choice of forum

7

should not be disregarded entirely and emphasize that this forum was chosen, in part, because their claims arise under California law. (ECF No. 10, p. 11.)

The operative facts show a limited connection to this District. One of the four named Plaintiffs alleges that they suffered harm in California, and the third party to whom data was allegedly disclosed to is also located in California. However, the third party, Alphabet, Inc., is located outside of this district in the Northern District of California. While these facts establish that at least some of the alleged harm and unauthorized conduct occurred in this forum, the remaining named Plaintiffs reside in other states, and the website through which the data was collected is operated and controlled from Defendant's principal place of business in Texas. The core decisions regarding data collection and disclosure appear to have been made there, suggesting that the locus of the operative conduct lies outside this District. (ECF No. 15, p. 6 n.5.) Finally, the Court finds that Defendant has not demonstrated that Plaintiffs have engaged in forum shopping. Therefore, the Court finds this factor neutral.

### 2. Convenience of the Parties

Defendant argues that the Eastern District of California is not a convenient forum because most of the Plaintiffs have no connection to this District. (ECF No. 8, p. 11.) Only one of the four named Plaintiffs resides in California, while the remaining Plaintiffs reside in Illinois, Maryland, and New York. Defendant further contends that a more central location, such as Texas, would be more convenient because VisionWorks is incorporated and maintains its principal place of business there, and Texas is geographically closer to the non-California Plaintiffs. (ECF No. 15, p. 10.)

The Court agrees with Defendant and finds that litigating in the Western District of Texas would be more convenient for the parties. As stated above, three out of four Plaintiffs are located on the East Coast and Midwest; one Plaintiff is located in California; and Defendant is located in Texas. While the parties are spread across multiple regions, the convenience of the parties favors a location that is centrally located to both the Plaintiffs and Defendant. Vehimax Int'l, LLC v. Jui Li Enter. Co., Ltd., 2010 WL 11527371, at *6 (C.D. Cal. Mar. 16, 2010) ("Given that the class members are scattered throughout the United States, a forum in the center of the country is likely

more convenient than one located on the coast."). Although one Plaintiff resides in California, requiring the remaining Plaintiffs to travel across the country to litigate in this District would impose a significantly greater burden. In contrast, Texas presents a more geographically central forum that minimizes travel distances for the majority of Plaintiffs while also aligning with Defendant's location. Thus, the Court finds this factor weighs in favor of transfer.

### 3. Convenience of the Witnesses

Defendant contends that many key witnesses are its employees. (ECF No. 8, p. 11.) This includes, "[i]ndividuals with relevant knowledge of Visionworks's policies regarding how users are informed of and consent to the collection, use, and disclosure of data collected through the Website," as well as members of VisionWorks's digital marketing department, all of whom reside in Texas. (Id.) Plaintiff responds that employee witnesses should be given less weight, as a company can compel its employees to testify. (ECF No. 10, p. 12.) Instead, Plaintiffs argue that the Court should focus on the convenience of non-party witnesses, such as Google, which is headquartered in Mountain View, California; Plaintiffs offer that Google can provide testimony regarding the technical aspects of data tracking. (Id. at p. 13.) Defendant, in its reply, asserts that the location and convenience of Google does not weigh against transfer since Google's headquarters is located outside of this District—more than 100 miles from this Court. (ECF No. 15, p. 11.)

The convenience of witnesses can often be the most important factor in determining whether to transfer a case under § 1404. Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 89 F.R.D. 497, 501 (C.D. Cal. 1981). Courts may consider the convenience of third-party witnesses with greater weight than employee witnesses. Courts have considered 'not only the number of witnesses [located in the respective districts], but also the nature and quality of their testimony." Catch Curve, Inc. v. Venali, Inc., No. CV 05-0420 DDP (AJWx), 2006 WL 4568799, at *7 (C.D. Cal. Feb. 27, 2006). Additionally, when a substantial number of witnesses are within the subpoena power of the transferee venue, that fact can weigh in favor of transfer. See In re Genentech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009).

Here, the parties identify potential witnesses as Google and VisionWorks employees.

1  While litigation is still in its early stages, the Court finds it likely that multiple witnesses will be
2  located at VisionWorks's headquarters in Texas.  Thus, a Fed. R. Civ. P. 30(b)(6) deposition of
3  VisionWorks will almost certainly be necessary.  Plaintiff does not contest that VisionWorks
4  employees are relevant to their claims.

5  In contrast, the Court finds it unlikely that there will be many non-party witnesses located
6  in California.  Plaintiffs identify Google as a potential non-party witness; however, its
7  headquarters are located outside the subpoena power of this Court.  Under Fed. R. Civ. P. 45(c)(1),
8  the Court's subpoena power extends only to the Eastern District of California and within 100
9  miles of the trial location in Fresno.  This limitation diminishes the weight of Plaintiff's proffered
10 third-party witness as reason for staying in California, and the Court finds this factor does not
11 weigh against transfer.

12 Although employee witnesses can be given less consideration, their location in Texas still
13 weighs in favor of transfer, particularly when compared to non-party witnesses who are beyond
14 the Court's subpoena reach.  For these reasons, the Court finds that convenience of witnesses
15 weighs in favor of transfer.

16 **4.    Ease of Access to the Evidence**

17 The parties agree most of the evidence is electronically available. (ECF No. 8, p. 12; ECF
18 No. 10, pp. 13-14.)  Courts have consistently recognized that the ease of access to documents
19 does not weigh heavily in the transfer analysis, particularly given the widespread use of electronic
20 document storage and transfer.  See, e.g., Doe v. Epic Games, 435 F. Supp. 3d 1024, 1042 (N.D.
21 Cal. 2020) ("[I]n the age of electronically stored information, the ease of access to evidence is
22 neutral because much of the evidence in this case will be electronic documents, which are
23 relatively easy to obtain in any district.").  Given that the parties agree most evidence is
24 electronically accessible, and neither has claimed hardship associated with document production
25 or transport, the Court finds this factor is neutral.

26 **5.    Familiarity of Each Forum with the Applicable Law**

27 Plaintiffs argue that this Court is more familiar with California law and assert this as a
28 factor weighing against transfer. (ECF No. 10, p. 14.)  This argument is unpersuasive.  "Federal

10

courts are deemed capable of applying the substantive law of other states." EFG Bank AG, Cayman Branch v. Transamerica Life Ins. Co., No. 2:16-cv-08104-CAS (AJWx), 2017 WL 2926022, at *4 (C.D. Cal. July 6, 2017). Indeed, "federal judges routinely apply the law of a State other than the State in which they sit." Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 67 (2013); see also Saunders v. USAA Life Ins. Co., 71 F. Supp. 3d 1058, 1061 (N.D. Cal. 2014) ("it is routine for federal courts to analyze and apply the law of diverse states."). Because the Western District of Texas is equally capable of applying California law, the Court considers this factor neutral.

### 6. Feasibility of Consolidation of Other Claims

Defendant argues there is a significant overlap of both factual and legal issues presented in this case and in Sharma to award consolidation. (ECF No. 8, p. 12.) However, as discussed above, Sharma has been administratively closed since February 2025. Given its inactive status, consolidation of the claims is uncertain at this time. As such, the Court finds this factor neutral.

### 7. Local Interest in the Controversy

Plaintiffs state that California has an interest in the privacy of its residents. (ECF No. 10, p. 15.) The Court agrees California has an interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985). However, that interest is tempered here because three out of the four Plaintiffs are not California residents. In putative class actions, multiple states share an equal interest in protecting the rights of its citizens.

Defendant argues that Texas has a strong interest in adjudicating claims against Texas corporations. (ECF No. 15, p. 1.) VisionWorks is headquartered in Texas, and the controversy arises from VisionWorks's website, which Defendant maintains. Courts have recognized that states have local interest in deciding matters pertaining to businesses that are headquartered within its borders. See Guimei v. Gen. Elec. Co., 172 Cal. App. 4th 689, 703 (2009) (noting that when "defendants are not California corporations, California has little interest in keeping the litigation in this state to deter future wrongful conduct"); Hawkins, 924 F. Supp 2d at 1216 (finding local interest favored the forum where defendant was headquartered and where decisions for the

business were made); Kabbash v. Jewelry Channel, Inc. USA, No. CV15-4007 DMG (MRWx), 2016 WL 9132930, at *6 (C.D. Cal. Feb. 22, 2016) ("[Defendant] is a Texas company and therefore California does not have a local interest in the litigation.").

Courts considering a similar split of interests between fora have concluded that this factor is neutral. See, e.g., Van Meter v. Mondelez Int'l, Inc., No. 24-CV-00565-AMO, 2025 WL 875391, at *4 (N.D. Cal. Mar. 18, 2025) (finding factor neutral where California had an interest in protecting its citizens and Illinois had an interest in adjudicating disputes involving companies headquartered there). Given that Texas has as much interest in regulating the conduct of one of its corporations as California does in protecting its residents, the Court finds this factor neutral.

### 8.  Relative Court Congestion and Time in Each Forum

The last factor examines "whether a trial may be speedier in another court because of its less crowded docket." Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1337 (9th Cir. 1984). "To measure congestion, courts compare the two fora's 'median time from filing to disposition or trial.'" Shore to Shore Props., LLC. v. Allied World Assur., No. C 11-01512 JSW, 2011 WL 4344177, at *6 (N.D. Cal. 2011). However, in the Ninth Circuit, docket congestion is given little weight in assessing the propriety of a § 1404(a) transfer. Rubio v. Monsanto Co., 181 F. Supp. 3d 746, 765 (C.D. Cal. 2016).

As the parties acknowledge, the judges in this Court maintain one of the heaviest dockets in the nation. Citing the Statistic Tables for the Federal Judiciary[2], Defendant notes "[t]he median time to trial from December 31, 2023, to December 31, 2024, for completed civil trials was 67.5 months in the Eastern District of California (over twice the median across all districts), compared to 34.4 months in the Western District of Texas." (ECF No. 8, p. 14.) Plaintiffs concede this factor weighs in favor of transfer. (ECF No. 10, p. 11 n.6.) The Court agrees, although it is not afforded much weight.

Upon weighing the factors discussed above, the Court finds that transfer to the Western District of Texas is appropriate and warranted under 28 U.S.C. § 1404(a).

---

[2] *Table C-5-U.S. District Courts-Civil Statistical Tables of the Federal Judiciary (December 31, 2024)*, https://www.uscourts.gov/data-news/data-tables/2024/12/31/statistical-tables-federal-judiciary/c-5 (last accessed September 15, 2025).

**V.**

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendant VisionWorks's motion to transfer (ECF No. 8) be GRANTED;

2. This matter be TRANSFERRED to the United States District Court for the Western District of Texas.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **October 16, 2025**

STANLEY A. BOONE
United States Magistrate Judge